## Staunton

## ATLANTIC STATES MOTOR LINES, INC. v. COMMONWEALTH OF VIRGINIA.

September 3, 1947.

Record No. 3219.

Present, Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*S. W. Shelton,* for the appellant.

*Abram P. Staples, Attorney General,* and *Walter E. Rogers, Assistant Attorney General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The State Corporation Commission of Virginia issued a rule against the Atlantic States Motor Lines, Inc., a North Carolina corporation operating its motor vehicles on the highways of Virginia as an interstate carrier, charging it with violating chapter 108 of the Acts of Assembly of 1942. This act requires every motor carrier operating for hire over the highways of Virginia, whether in intrastate or interstate commerce, or both, to "purchase, within the State, gasoline, or other motor fuel, at least equal to that amount necessary for use in the operation as a motor carrier within the State, or such motor carrier shall, in lieu of making such purchase, pay into the treasury, for credit to the State Highway Fund, an amount equivalent to the prevailing State tax on the amount of gasoline, or other motor fuel, necessary for its operation as a motor carrier within this State over and above the amount of tax paid on gasoline, or other motor fuel, actually purchased in the State."

The State Corporation Commission, after a full hearing, found that the motor carrier, for the period commencing July 1, 1944, and ending June 30, 1946, had purchased beyond the borders of Virginia 130,207.9 gallons of gasoline and used it in operating its motor vehicles over the highways of Virginia, and had failed to pay a tax of five cents a gallon for use of the highways in Virginia. A judgment was entered against appellant for $6,510.40, the amount of unpaid tax, and $325 penalty for violation of the statute. From that order, an appeal was granted the carrier as a matter of right under Code 1942 (Michie), sec. 3734.

In *Mason and Dixon Lines, Inc.* v. *Commonwealth*, 185 Va. 877, 41 S. E. (2d) 16 (opinion published since this appeal was docketed), the same questions involved in the ten assignments of error stated in the petition in this case were decided adversely to appellant's contention. From the judgment of this court, entered pursuant to that opinion, the application of Mason and Dixon Lines, Inc., for a writ of certiorari to the Supreme Court of the United States was denied on April 14, 1947. The reasons assigned by Chief Justice Holt in that case are complete answers to appellant's contention in this case.

Appellant attempts in vain to make a distinction between the two cases. In its brief, this is said: "Under the decision of this Court in the Mason and Dixon case the statute in effect has been stripped of the provision whereby interstate carriers are required to purchase motor fuel in this State, and remains merely a law whereby there is a use tax imposed upon interstate carriers equivalent to the amount of 5¢ per gallon upon each gallon of motor fuel consumed in their Virginia operations. The question, therefore, boils itself down to the inquiry of whether such use tax (1) is paid by intrastate carriers, and (2) whether if it be paid by interstate carriers alone, it constitutes a substantial discrimination in favor of intrastate business?"

The plain and simple purpose of the act was to levy a use tax of five cents per gallon of gasoline upon all motor vehicle carriers for hire operating over the highways of Virginia. If the gasoline so used was purchased in Virginia, the tax was paid by the seller, who remitted all sums so collected to the treasurer of Virginia for use in building and maintaining the highways. If the user purchased his gasoline beyond the borders of Virginia, he was required to pay, through the Corporation Commission, to the Commonwealth the same rate of tax for the use of the highways.

The same attorney appeared for appellant and for the Mason and Dixon Lines, Inc. In the latter case, he contended that the statute was unconstitutional because it re-

quired interstate carriers to purchase gasoline used in Virginia from local dealers. This contention having been rejected, he now contends that the statute is unconstitutional because it has been construed to be a use tax and is not paid by intrastate carriers. A complete answer to this contention is that intrastate carriers purchase their gasoline from local dealers and pay the tax to such dealers. Motor carriers for hire, whether doing an intra- or interstate business, have the election to purchase gasoline in Virginia and use the same on her highways, or to· buy the gasoline elsewhere and pay the use tax on .so much of it as is used to operate its motor vehicles over the highways of the State. No carrier is required to do both, but each must pay the tax in one or the other of the two methods set forth in the statute.

Mr. A. S. Boatright, the assistant tax assessor working under the supervision of the Corporation Commission charged with the enforcement of the provisions of this act, stated that "the Act is enforced against all motor vehicle carriers operating for compensation, whether contract, common carrier or for hire carriers, of which the Commission has knowledge. Where it is found that a carrier is operating exclusively in Virginia, reports are not required since such carriers purchase their gasoline in this State."

He also said: "When it has been ascertained that such carrier is not complying with the Act steps are taken to enforce such a compliance."

The accuracy of the formula used in determining the amount of the tax was attacked in this case, as it was in the case of *Mason and Dixon Lines, Inc.* v. *Commonwealth, supra.* In the latter case, it was decided adversely to appellant's contention. It is useless to discuss an issue that has been foreclosed.

The order of the Commission is affirmed.

*Affirmed.*